**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | |
|---|---|
| **JOSEPH MATASSA**<br>113 Longfellow Drive<br>Millersville, Maryland 21108<br>(Anne Arundel County)<br><br>– Individually and on Behalf of All Others<br>Similarly Situated –<br><br>**Plaintiff,**<br><br>v.<br><br>**REGENCELL BIOSCIENCE HOLDINGS**<br>**LIMITED**<br>9/F Chinachem Leighton Plaza<br>29 Leighton Road<br>Causeway Bay, Hong Kong<br><br>**YAT-GAI AU**<br>c/o 9/F Chinachem Leighton Plaza<br>29 Leighton Road<br>Causeway Bay, Hong Kong<br><br>**MICHELLE CHAN**<br>c/o 9/F Chinachem Leighton Plaza<br>29 Leighton Road<br>Causeway Bay, Hong Kong<br><br>**Defendants.** | **Case No.**<br><br>**CLASS ACTION**<br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Matassa ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Regencell Bioscience Holdings Limited ("Regencell" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Regencell securities between October 28, 2024 and October 31, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Regencell is a purported early-stage bioscience company focused on the research, development, and commercialization of traditional Chinese medicine ("TCM") for the treatment of attention-deficit/hyperactivity disorder ("ADHD") and autism spectrum disorder ("ASD")— two disorders generally considered incurable under current medical consensus.  The Company asserts that while "[c]urrently available drugs and treatments in the markets for ADHD and ASD

1

aim to suppress or alleviate symptoms," its "TCM formula aim[s] to treat ***the fundamental cause*** of neurocognitive disorders."[1]

3.      Regencell is a "controlled company" under the Nasdaq Capital Market's ("NASDAQ") rules.  Per Regencell's most recent annual report on Form 20-F, as of June 30, 2025, 88.8% of its shares were held by its directors and executive officers, with 88.6% of those shares owned by Defendant Yat-Gai Au ("Au")—the Company's founder, Chairman, and Chief Executive Officer ("CEO").  Today, 88.56% of Regencell's shares are held by insiders, with the vast majority of those shares still presumably in the hands of Defendant Au.

4.      From the start of the Class Period through approximately mid-March 2025, Regencell's ordinary shares generally traded at less than 30 cents per share.[2]  However, beginning in early May 2025, the price for these shares suddenly skyrocketed, closing at a Class Period high of ***$78.00*** per share on June 17, 2025—a ***48,650%*** increase from the start of the Class Period and an approximately ***382%*** increase from just a week prior.  By the following week, the Company's share price had plummeted, closing in a range only slightly higher than $20.00 per share.  As of the time of the filing of this Complaint, Regencell's ordinary shares trade around $27.00 to $29.00 per share, with a three-month average trading volume of approximately 167,380 shares.

5.      The meteoric rise in Regencell's ordinary share price has no evident connection to any public disclosures regarding its underlying business fundamentals.  Regencell has twelve employees, no approved or salable products, no revenue, and has incurred operating losses since its formation.  Further, notwithstanding its stated goal of curing medical disorders that are widely considered incurable, the Company's research and development ("R&D") costs were only $0.95

---

[1] All emphases herein are added unless otherwise indicated.

[2] All price-per-share amounts stated herein reflect their adjusted value following a 38-for-1 ("38:1") stock split that Regencell effectuated in June 2025.

million and $1.07 million for the years ended June 30, 2025 and 2024, respectively. This stands in stark contrast with Regencell's own representations that "[a]verage [R&D] to marketplace cost for a new medicine is nearly $4 billion, and can sometimes exceed $10 billion." The Company itself has admitted that "our stock price has experienced extreme price and volume fluctuations that have often been unrelated or disproportionate to the operating performance of our company."

6.    Notwithstanding the foregoing, Regencell has a market value of approximately *$14 billion*. As *The Wall Street Journal* ("*WSJ*") observed in January 2026, "[f]or context, only 20 of the 261 companies in the Nasdaq Biotechnology Index had a greater market value; the index doesn't include Regencell."

7.    At all relevant times, Defendants downplayed the likelihood and severity of, and/or risks related to, volatility in the market for Regencell's ordinary shares, or else downplayed the potential role of market manipulation in generating said volatility. Indeed, Defendants attributed any volatility largely to short-selling activity and unidentified third-party news and social media activity.

8.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Regencell was vulnerable and/or subject to market manipulation; (ii) the resulting volatility in the market for the Company's ordinary shares exposed Regencell's investors to significant financial risk; (iii) all the foregoing subjected Regencell to a heightened risk of regulatory and/or governmental scrutiny and enforcement action, as well as significant legal, monetary, and reputational harm; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

3

9.      The truth began to emerge on October 31, 2025, when Regencell disclosed in an SEC filing that "following recent volatility in the market for our Ordinary Shares, the Company received correspondence and a subpoena from the U.S. Department of Justice ('DOJ'), indicating that the DOJ is conducting an investigation into the trading in our Ordinary Shares." Regencell said that "[t]he DOJ has requested the production of documents and communications concerning these and other corporate operational, financial and accounting matters" and that the Company "expect[s] to continue to incur significant legal costs and other expenses in connection with responding to the investigation" and "may be required to pay fines, penalties, damages or settlement costs in excess of our insurance coverage, if any, related to the investigation."

10.     On this news, Regencell's ordinary share price fell $3.09 per share, or 18.56%, to close at $13.56 per share on November 3, 2025.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Plaintiff is a resident of this District, and a substantial part of the property that is the subject of this action is thus situated in this District.  Moreover, per

4

Regencell's most recent annual report on Form 20-F, as of June 30, 2025, the Company had 494,488,908 ordinary shares issued and outstanding.  Regencell's ordinary shares trade in the U.S. on the NASDAQ.  Accordingly, in addition to Plaintiff, there are presumably hundreds, if not thousands, of investors in Regencell's ordinary shares located in the U.S., some of whom, like Plaintiff, undoubtedly reside in this District.

15.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

16.     Plaintiff, as set forth in the attached Certification, acquired Regencell securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.  Plaintiff resides in Anne Arundel County, Maryland, which is located in this District.

17.     Defendant Regencell is organized under the laws of the Cayman Islands with principal executive offices located 9/F Chinachem Leighton Plaza, 29 Leighton Road, Causeway Bay, Hong Kong.  The Company's ordinary shares trade in an efficient market on the NASDAQ under the ticker symbol "RGC".

18.     Defendant Au has served as Regencell's Chairman and CEO at all relevant times. Defendant Au is also the Company's founder.

19.     Defendant Michelle Chan ("Chan") has served as Regencell's Financial Controller at all relevant times.

20.     Defendants Au and Chan are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Regencell's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Regencell's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Regencell, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Regencell and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Regencell is a purported early-stage bioscience company focused on the research, development, and commercialization of TCM for the treatment of ADHD and ASD—two disorders generally considered incurable under current medical consensus. The Company asserts that while "[c]urrently available drugs and treatments in the markets for ADHD and ASD aim to suppress or alleviate symptoms," its "TCM formula aim[s] to treat ***the fundamental cause*** of neurocognitive disorders."

6

24.     Regencell is a "controlled company" under NASDAQ rules.  Per Regencell's most recent annual report on Form 20-F, as of June 30, 2025, 88.8% of its shares were held by its directors and executive officers, with 88.6% of those shares owned by Defendant Au.  Today, 88.56% of Regencell's shares are held by insiders, with the vast majority of those shares still presumably in the hands of Defendant Au.

25.     Since its public listing on the NASDAQ in July 2021 until approximately early May 2025, Regencell generally traded below $1.00 per share.  As of the time of the filing of this Complaint, Regencell's ordinary shares trade around *$27.00 to $29.00* per share, with a three-month average trading volume of approximately 167,380 shares.

26.     The meteoric rise in Regencell's ordinary share price has no evident connection to any public disclosures regarding its underlying business fundamentals.  Regencell has twelve employees, no approved or salable products, no revenue, and has incurred operating losses since its formation.  Further, notwithstanding its stated goal of curing medical disorders that are widely considered incurable, the Company's R&D costs were only $0.95 million and $1.07 million for the years ended June 30, 2025 and 2024, respectively.  This stands in stark contrast with Regencell's own representations that "[a]verage [R&D] to marketplace cost for a new medicine is nearly $4 billion, and can sometimes exceed $10 billion."  The Company itself has admitted that "our stock price has experienced extreme price and volume fluctuations that have often been unrelated or disproportionate to the operating performance of our company."

27.     Notwithstanding the foregoing, Regencell has a market value of approximately *$14 billion*.  As *WSJ* observed in January 2026, "[f]or context, only 20 of the 261 companies in the Nasdaq Biotechnology Index had a greater market value; the index doesn't include Regencell."

28.     At all relevant times, Defendants downplayed the likelihood and severity of, and/or risks related to, volatility in the market for Regencell's ordinary shares, or else downplayed the potential role of market manipulation in generating said volatility.  Indeed, Defendants attributed any volatility largely to short-selling activity and unidentified third-party news and social media activity.

**Materially False and Misleading Statements**

29.     The Class Period begins on October 28, 2024, the first trading day after Regencell filed an annual report on Form 20-F with the SEC during post-market hours, reporting its financial and operating results for its fiscal fourth quarter and year ended June 30, 2024 (the "2024 20-F"). The 2024 20-F purported to warn of market volatility risks that "may" or "could" materialize "if" certain conditions were met, stating, in relevant part:

> Our Ordinary Shares *may* be very thinly traded, and the price *if* traded *may* not reflect our value . . . . *If* a more active market should develop, the price *may* be highly volatile. The market price for our Ordinary Shares *may* be volatile and subject to wide fluctuations due to factors such as:
>
> - the financial projections we *may* provide to the public, any changes in these projections or our failure to meet these projections;
>
> - actual or anticipated fluctuations in our quarterly operating results;
>
> - changes in financial estimates by securities research analysts;
>
> - negative publicity, studies or reports;
>
> - our capability to catch up with the technological innovations in the industry;
>
> - announcements by us or our competitors of acquisitions, strategic partnerships, joint ventures or capital commitments;
>
> - addition or departure of key personnel;
>
> - fluctuations of exchange rates between Hong Kong dollar and the U.S. dollar; and

8

- general economic or political conditions in Hong Kong.

   In addition, the securities market has from time-to-time experienced significant price and volume fluctuations that are not related to the operating performance of particular companies. These market fluctuations **may** also materially and adversely affect the market price of our Ordinary Shares.

Plainly, the foregoing risk warnings were generic, catch-all provisions that were not tailored to Defendants' actual known risks regarding volatility in the market for Regencell's ordinary shares, much less the potential role of market manipulation in generating such volatility.

30.     Indeed, the 2024 20-F downplayed any such risks by highlighting potential short-selling activity as a source of volatility in the market for Regencell's ordinary shares, stating:

   *A possible "short squeeze" due to a sudden increase in demand of our Ordinary Shares that largely exceeds supply may lead to price volatility in our Ordinary Shares.*

   Investors may purchase our Ordinary Shares to hedge existing exposure in our Ordinary Shares or to speculate on the price of our Ordinary Shares. Speculation on the price of our Ordinary Shares may involve long and short exposures. To the extent aggregate short exposure exceeds the number of shares of our Ordinary Shares available for purchase in the open market, investors with short exposure may have to pay a premium to repurchase our Ordinary Shares for delivery to lenders of our Ordinary Shares. Those repurchases may in turn, dramatically increase the price of our Ordinary Shares until investors with short exposure are able to purchase additional common shares to cover their short position. This is often referred to as a "short squeeze." A short squeeze could lead to volatile price movements in our Ordinary Shares that are not directly correlated to the performance or prospects of our company and once investors purchase our Ordinary Shares necessary to cover their short position the price of our Ordinary Shares may decline.

(Emphasis in original.)

31.     Appended as exhibits to the 2024 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified, *inter alia*, that the 2024 20-F "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

9

32.     Throughout the remainder of October 2024 through approximately mid-March 2025, Regencell's ordinary shares traded below $1.00 per share.

33.     On May 1, 2025, the price for Regencell's ordinary shares suddenly skyrocketed to a closing price of $2.03 per share.  By the end of the month, Regencell's ordinary shares were generally trading around *$20.00* per share—an approximate *900%* increase in the span of a month.

34.     On June 2, 2025, Regencell issued a press release announcing that its Board "approved a 38-for-one forward stock split to be paid in the form of a stock bonus" with "trading . . . expected to begin on a post-stock split adjusted basis at market open on June 16, 2025." Pursuant to the stock split, "[e]ach shareholder of the Company of record at the close of business on June 12, 2025 w[ould] receive 37 additional shares for every share held on the record date." The press release represented that "[t]he forward stock split is intended to enhance liquidity in the market for the Company's ordinary shares and make the shares more accessible to investors."

35.     On June 16, 2025—*i.e.*, when Regencell's ordinary shares began trading on a 38:1-stock-split-adjusted basis—the Company's ordinary share price closed at *$60.00* per share, compared to only $15.66 per share the day prior, on no apparent news from the Company, save for its effectuation of the previously disclosed stock split.

36.     The following day, on June 17, 2025, Regencell's ordinary share price closed at a Class Period high of *$78.00* per share—a *48,650%* increase from the start of the Class Period and an approximately *382%* increase from just a week prior.  By the following week, the Company's share price had plummeted, closing in a range only slightly higher than $20.00 per share.

37.     On June 30, 2025—by which time the Company's ordinary shares were generally trading around $17.00 per share—Regencell filed a report of foreign issuer on Form 6-K with the SEC, appended to which as an exhibit were its unaudited condensed consolidated interim financial

10

results for the six months ended December 31, 2024 (the "H1 2025 Financial Statements").  The

H1 2025 Financial Statements stated the following, in relevant part, regarding volatility in the

market for the Company's ordinary shares:

> **The market price of our ordinary shares has been extremely volatile and may continue to be volatile due to numerous circumstances beyond our control.** These factors include, without limitation "short squeezes," comments by securities analysts or other third parties, including blogs, articles, message boards and social and other media, and an increase or decrease in the short interest in our ordinary shares. Over the last several weeks, our stock price has experienced extreme price and volume fluctuations that have often been unrelated or disproportionate to the operating performance of our company. For example, on June 16, 2025, our ordinary shares experienced an intra-day trading high of $83.600 per share and a low of $26.200 per share. In addition, from April 26, 2025 to June 20, 2025, the closing price of our ordinary shares on the Nasdaq Stock Market LLC ranged from as low as $0.832 per share to $83.600 per share. During this time, we have not experienced any material changes in our financial condition or results of operations that would explain such price volatility or trading volume. These broad market fluctuations may adversely affect the trading price of our ordinary shares. We believe a large proportion of our ordinary shares has been and may continue to be traded by short sellers which has put and may continue to put pressure on the supply and demand for our ordinary shares, further influencing volatility in its market price. Additionally, these and other external factors have caused and may continue to cause the market price and demand for our ordinary shares to fluctuate, which may limit or prevent investors from readily selling their shares of ordinary shares and may otherwise negatively affect the liquidity of our ordinary shares.

(Emphasis in original.)  Notably, the foregoing statements failed to disclose what, if any, role

market manipulation had played in generating the substantial volatility in the market for

Regencell's ordinary shares, much less that such activity had subjected the Company to an

increased risk of regulatory and/or governmental scrutiny and enforcement action, as well as

significant legal, monetary, and reputational harm.

38.    Indeed, the H1 2025 Financial Statements downplayed any such risks by blaming

the increased volatility primarily on short-selling activity, stating:

> **We believe that "short squeeze" due to a sudden increase in demand for our ordinary shares that largely exceeds supply has led to, and may continue to lead to, extreme price volatility in shares of our ordinary shares.** In general,

11

investors may purchase shares of our ordinary shares to hedge existing exposure or to speculate on the price of our ordinary shares. Speculation on the price of our ordinary shares may involve long and short exposures. To the extent aggregate short exposure exceeds the number of shares of our ordinary shares available for purchase on the open market, investors with short exposure may have to pay a premium to repurchase shares of our ordinary shares for delivery to lenders of our ordinary shares. Those repurchases may in turn, dramatically increase the price of shares of our ordinary shares until additional shares of our ordinary shares are available for trading or borrowing. This is often referred to as a "short squeeze." A large proportion of our ordinary shares (other than shares held by the Company's directors and officers) has been and may continue to be traded by short sellers which may increase the likelihood that our ordinary shares will be the target of a short squeeze. A short squeeze has led and could continue to lead to volatile price movements in shares of our ordinary shares that are unrelated or disproportionate to our operating performance or prospectus and, once investors purchase the shares of our ordinary shares necessary to cover their short positions, the price of our ordinary shares may rapidly decline. Investors that purchase shares of our ordinary shares during a short squeeze may lose a significant portion of their investment.

(Emphasis in original.)

39.     Similarly, the H1 2025 Financial Statements suggested that unidentified third-party news and social media activity was potentially to blame for the increased volatility in the market for Regencell's ordinary shares, stating, in relevant part:

**Information available in public media that is published by third parties, including blogs, articles, message boards and social and other media may include statements not attributable to the Company and may not be reliable or accurate.** We have received, and may continue to receive, a high degree of media coverage that is published or otherwise disseminated by third parties, including blogs, articles, message boards and social and other media. This includes coverage that is not attributable to statements made by our directors, officers or employees . . . . Information provided by third parties may not be reliable or accurate and could materially impact the trading price of our ordinary shares which could cause losses to your investments.

(Emphasis in original.)

40.     Throughout the remainder of the Class Period, Regencell's ordinary share price generally oscillated at closing prices between $10.00 and $20.00 per share.

41.     The statements referenced in ¶¶ 29-31 and 37-39 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Regencell was vulnerable and/or subject to market manipulation; (ii) the resulting volatility in the market for the Company's ordinary shares exposed Regencell's investors to significant financial risk; (iii) all the foregoing subjected Regencell to a heightened risk of regulatory and/or governmental scrutiny and enforcement action, as well as significant legal, monetary, and reputational harm; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

42.     Additionally, throughout the Class Period, Regencell's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations. Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Regencell to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants failed to disclose, *inter alia*, that Regencell was vulnerable and/or subject to market manipulation. Defendants also failed to disclose that the resulting volatility in the market for the Company's ordinary shares exposed Regencell's investors to significant financial risk, as well as the Company to significant legal, financial, and reputational harm. Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

43. Likewise, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Regencell to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, the issues described *supra* at ¶ 42 violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**The Truth Begins to Emerge**

44. The truth began to emerge on October 31, 2025, when, during post-market hours, Regencell filed an annual report on Form 20-F with the SEC, reporting its financial and operating results for its fiscal fourth quarter and year ended June 30, 2025 (the "2025 10-K"). The 2025 10-K disclosed, in relevant part:

> [F]ollowing recent volatility in the market for our Ordinary Shares, ***the Company received correspondence and a subpoena from the [DOJ], indicating that the DOJ is conducting an investigation into the trading in our Ordinary Shares. The DOJ has requested the production of documents and communications concerning these and other corporate operational, financial and accounting matters.*** We are cooperating with this investigation, but we cannot predict its ultimate resolution. ***We expect to continue to incur significant legal costs and other expenses in connection with responding to the investigation. We may be required to pay fines, penalties, damages or settlement costs in excess of our insurance coverage, if any, related to the investigation.*** While we are not currently subject to any legal or administrative proceedings, ***it is possible that government investigations, including the pending investigation in which we are involved, and related legal and administrative proceedings in the future, if any, could result in the institution of administrative, injunctive, or other proceedings against us and/or our directors, officers, or employees or the imposition of fines, suspension, or other remedies and sanctions***. Any such material costs and expenses or injunctive relief could have a material adverse effect on our financial condition and results of operations.

45. On this news, Regencell's ordinary share price fell $3.09 per share, or 18.56%, to close at $13.56 per share on November 3, 2025.

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## Post-Class Period Developments

47.     Following the end of the Class Period, the market for Regencell's ordinary shares has continued to experience significant volatility.  For example, in just the past few months, *Bloomberg* has reported significant increases in Regencell's ordinary share price seemingly divorced from any underlying news about the Company.  On March 9, 2026, *Bloomberg* reported that prices for Regencell's ordinary shares were up 23%, the most in six weeks.  On March 18, 2026, *Bloomberg* reported that prices for Regencell's ordinary shares were up 18%, the most in eight weeks.  And, on April 1, 2026, *Bloomberg* reported that prices for Regencell's ordinary shares were up 19%, the most in ten weeks.  In each instance, *Bloomberg* reported that trading volume in Regencell's ordinary shares had surged.

## SCIENTER ALLEGATIONS

48.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  As a result of the market manipulation alleged herein, Regencell transformed from a penny-stock company into one of the most valuable bioscience companies traded on the NASDAQ, achieving a market value of approximately *$14 billion* in less than two years, despite having twelve employees, no approved or salable products, and no revenue.  Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  Indeed, at all relevant times, Defendant Au owned in excess of *80%* of Regencell's ordinary shares.  Accordingly, Defendant Au, in addition to experiencing a massive rise in net worth, was undoubtedly highly attuned to and

15

focused on any significant fluctuations in the Company's ordinary share price. Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Regencell securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Regencell securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Regencell or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Regencell;

- whether the Individual Defendants caused Regencell to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Regencell securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

17

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Regencell securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Regencell securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Regencell securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Regencell securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Regencell securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Regencell's finances and business prospects.

62.    By virtue of their positions at Regencell, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

19

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Regencell, the Individual Defendants had knowledge of the details of Regencell's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Regencell. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Regencell's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Regencell securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Regencell's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Regencell securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

20

65.     During the Class Period, Regencell securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Regencell securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Regencell securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Regencell securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.    During the Class Period, the Individual Defendants participated in the operation and management of Regencell, and conducted and participated, directly and indirectly, in the conduct of Regencell's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the manipulation of the market for Regencell's ordinary shares, and/or Regencell's vulnerability to said manipulation.

70.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Regencell's financial condition and results of operations, and to correct promptly any public statements issued by Regencell which had become materially false or misleading.

71.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Regencell disseminated in the marketplace during the Class Period concerning Regencell's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Regencell to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Regencell within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Regencell securities.

72.    Each of the Individual Defendants, therefore, acted as a controlling person of Regencell.  By reason of their senior management positions and/or being directors of Regencell, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Regencell to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Regencell and possessed

22

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Regencell.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the class representative;

B.    requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 24, 2026                    Respectfully submitted,

                                          /s/ *Daniel S. Sommers*
                                          Daniel S. Sommers (Md. Bar No. 15822)
                                          S. Douglas Bunch
                                          **COHEN MILSTEIN SELLERS &**
                                             **TOLL PLLC**
                                          1100 New York Avenue N.W.
                                          Suite 800, East Tower
                                          Washington, DC 20005
                                          Telephone: (202) 408-4600
                                          Facsimile: (202) 408-4699
                                          Email: dsommers@cohenmilstein.com
                                                 dbunch@cohenmilstein.com

                                          *Liaison Counsel for Plaintiff*

23

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
      ahood@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, _Joseph Matassa_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against Regencell Bioscience Holdings Limited ("Regencell") and authorize the filing of a comparable complaint on my behalf.

3.     I did not purchase or acquire Regencell securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Regencell securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.     The attached sheet lists all of my transactions in Regencell securities during the Class Period as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.       I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____
3/25/2026

                        **(Date)**

DocuSigned by:

*Joe Matassa*

4D5688717B58467...

**(Signature)**

Joseph Matassa

**(Type or Print Name)**

**Regencell Bioscience Holdings Limited (RGC)**                    **Joseph Matassa**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 3/13/2025 | 450 | $9.2500 |
| Purchase/Acquisition | 5/9/2025 | 1 | $300.0000 |
| Purchase/Acquisition | 5/9/2025 | 1 | $335.0000 |
| Purchase/Acquisition | 5/12/2025 | 1 | $450.0000 |
| Purchase/Acquisition | 5/12/2025 | 1 | $480.0000 |
| Purchase/Acquisition | 5/12/2025 | 1 | $400.0000 |
| Purchase/Acquisition | 5/12/2025 | 1 | $400.0000 |
| Purchase/Acquisition | 5/12/2025 | 6 | $480.0000 |
| Purchase/Acquisition | 5/12/2025 | 20 | $470.0000 |
| Purchase/Acquisition | 5/12/2025 | 25 | $470.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $485.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $500.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $500.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $505.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $510.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $515.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $525.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $525.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $525.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $530.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $540.0000 |
| Purchase/Acquisition | 5/13/2025 | 5 | $535.0000 |
| Purchase/Acquisition | 5/13/2025 | 8 | $520.0000 |
| Purchase/Acquisition | 5/13/2025 | 10 | $510.0000 |
| Purchase/Acquisition | 5/14/2025 | 1 | $348.0000 |
| Purchase/Acquisition | 5/14/2025 | 1 | $380.0000 |
| Purchase/Acquisition | 5/14/2025 | 1 | $380.0000 |
| Purchase/Acquisition | 5/14/2025 | 2 | $379.9700 |
| Purchase/Acquisition | 5/14/2025 | 3 | $360.0000 |
| Purchase/Acquisition | 5/14/2025 | 3 | $370.0000 |
| Purchase/Acquisition | 5/15/2025 | 1 | $404.0000 |
| Purchase/Acquisition | 5/15/2025 | 1 | $410.0000 |
| Purchase/Acquisition | 5/15/2025 | 5 | $400.0000 |
| Purchase/Acquisition | 5/15/2025 | 5 | $390.0000 |
| Purchase/Acquisition | 5/15/2025 | 5 | $399.9000 |
| Purchase/Acquisition | 5/16/2025 | 1 | $388.0000 |
| Purchase/Acquisition | 5/16/2025 | 1 | $415.0000 |
| Purchase/Acquisition | 5/16/2025 | 1 | $430.0000 |
| Purchase/Acquisition | 5/16/2025 | 1 | $440.0000 |
| Purchase/Acquisition | 5/16/2025 | 3 | $420.0000 |
| Purchase/Acquisition | 5/16/2025 | 5 | $400.0000 |
| Purchase/Acquisition | 5/16/2025 | 5 | $400.0000 |
| Purchase/Acquisition | 5/16/2025 | 5 | $420.0000 |
| Purchase/Acquisition | 5/16/2025 | 5 | $425.0000 |
| Purchase/Acquisition | 5/16/2025 | 5 | $450.0000 |
| Purchase/Acquisition | 5/16/2025 | 5 | $410.0000 |
| Purchase/Acquisition | 5/19/2025 | 2 | $344.8600 |
| Purchase/Acquisition | 5/19/2025 | 3 | $305.0000 |
| Purchase/Acquisition | 5/19/2025 | 3 | $320.0000 |

**Regencell Bioscience Holdings Limited (RGC)**                    **Joseph Matassa**

**List of Purchases/Acquisitions and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/19/2025 | 5 | $315.0000 |
| Purchase/Acquisition | 5/19/2025 | 5 | $340.0000 |
| Purchase/Acquisition | 5/19/2025 | 5 | $375.0000 |
| Purchase/Acquisition | 5/20/2025 | 3 | $450.0000 |
| Purchase/Acquisition | 5/20/2025 | 3 | $449.5500 |
| Purchase/Acquisition | 5/21/2025 | 2 | $475.0000 |
| Purchase/Acquisition | 5/21/2025 | 2 | $480.0000 |
| Purchase/Acquisition | 5/21/2025 | 3 | $430.0000 |
| Purchase/Acquisition | 5/21/2025 | 3 | $435.0000 |
| Purchase/Acquisition | 5/21/2025 | 3 | $423.4900 |
| Purchase/Acquisition | 5/21/2025 | 3 | $450.0000 |
| Purchase/Acquisition | 5/21/2025 | 4 | $415.0000 |
| Purchase/Acquisition | 5/21/2025 | 4 | $470.0000 |
| Purchase/Acquisition | 5/22/2025 | 5 | $419.0000 |
| Purchase/Acquisition | 5/23/2025 | 2 | $535.0000 |
| Purchase/Acquisition | 5/23/2025 | 2 | $515.0000 |
| Purchase/Acquisition | 5/23/2025 | 3 | $525.0000 |
| Purchase/Acquisition | 5/23/2025 | 3 | $530.0000 |
| Purchase/Acquisition | 5/23/2025 | 3 | $515.0000 |
| Purchase/Acquisition | 5/23/2025 | 3 | $500.0000 |
| Purchase/Acquisition | 5/27/2025 | 1 | $490.0000 |
| Purchase/Acquisition | 5/27/2025 | 2 | $505.0000 |
| Purchase/Acquisition | 5/27/2025 | 2 | $542.1200 |
| Purchase/Acquisition | 5/27/2025 | 2 | $532.0000 |
| Purchase/Acquisition | 5/27/2025 | 2 | $545.0000 |
| Purchase/Acquisition | 5/27/2025 | 2 | $528.0000 |
| Purchase/Acquisition | 5/27/2025 | 2 | $532.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $505.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $515.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $525.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $500.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $505.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $506.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $515.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $515.0000 |
| Purchase/Acquisition | 5/27/2025 | 3 | $530.0000 |
| Purchase/Acquisition | 5/27/2025 | 5 | $545.0000 |
| Purchase/Acquisition | 5/28/2025 | 2 | $475.0000 |
| Purchase/Acquisition | 5/28/2025 | 2 | $500.0000 |
| Purchase/Acquisition | 5/28/2025 | 3 | $490.0000 |
| Purchase/Acquisition | 5/28/2025 | 4 | $475.0000 |
| Purchase/Acquisition | 5/28/2025 | 5 | $500.0000 |
| Purchase/Acquisition | 5/29/2025 | 1 | $725.0000 |
| Purchase/Acquisition | 5/29/2025 | 1 | $700.0000 |
| Purchase/Acquisition | 5/30/2025 | 1 | $800.0000 |
| Purchase/Acquisition | 5/30/2025 | 1 | $885.0000 |
| Purchase/Acquisition | 5/30/2025 | 1 | $869.0000 |
| Purchase/Acquisition | 6/2/2025 | 1 | $700.0000 |
| Purchase/Acquisition | 6/2/2025 | 1 | $725.0000 |

**Regencell Bioscience Holdings Limited (RGC)**                    **Joseph Matassa**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/2/2025 | 1 | $785.0000 |
| Purchase/Acquisition | 6/2/2025 | 1 | $800.0000 |
| Purchase/Acquisition | 6/3/2025 | 1 | $619.0000 |
| Purchase/Acquisition | 6/6/2025 | 1 | $650.0000 |
| Purchase/Acquisition | 6/9/2025 | 1 | $625.0000 |
| Purchase/Acquisition | 6/9/2025 | 1 | $635.0000 |
| Purchase/Acquisition | 6/10/2025 | 1 | $550.0000 |
| Purchase/Acquisition | 6/10/2025 | 1 | $595.0000 |
| Purchase/Acquisition | 6/10/2025 | 1 | $600.0000 |
| Purchase/Acquisition | 6/16/2025 | 20 | $75.5000 |
| Purchase/Acquisition | 6/16/2025 | 26 | $80.0000 |
| Purchase/Acquisition | 6/16/2025 | 50 | $68.0000 |
| Sale | 3/13/2025 | (300) | $10.0000 |
| Sale | 3/13/2025 | (150) | $11.9000 |
| Sale | 3/14/2025 | (250) | $11.7000 |
| Sale | 3/14/2025 | (100) | $13.0050 |
| Sale | 5/23/2025 | (3) | $525.0000 |
| Sale | 6/20/2025 | (20) | $35.1900 |